# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 18, 2010

Charles R. Fulbruge III
Clerk

No. 09-60075

JIMMY FORD,

Plaintiff - Appellee

v.

DIVERSIFIED TECHNOLOGY, INC.,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
No. 3:99-CV-435

Before KING, JOLLY, and STEWART, Circuit Judges.

PER CURIAM:[*]

After reviewing the trial record, we conclude that the jury had sufficient evidence to support its verdict and its award of compensatory and punitive damages.

The determinative question presented in this appeal is straightforward — whether the evidence supports the verdict of the jury.

There was substantial evidence that Mr. Ford was a long-time employee who had received overwhelmingly positive evaluations throughout his entire

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

career with the defendant.  His level of performance earned him routine and healthy bonuses.  But then one day in his fifteenth year of employment, he was involved in an EEOC investigation that displeased his boss and, according to his testimony, he was verbally berated and immediately punished with loss of prestige and responsibility.  After he filed his own EEOC charge, he was denied his routine bonus — the only employee not to receive one — and was fired when the litigation commenced.

Now, the defendant asserted its reasons for hostility shown against Mr. Ford, unrelated to the EEOC investigation, and argues that under the circumstances, Mr. Ford's participation in the investigation was not protected activity under Title VII.  But the circumstances can be looked at in two (or more) different ways, including the view that Mr. Ford was punished for failing to impede the investigation by kicking the EEOC agent out of the room,[1] as his boss suggested.  Moreover, if the jury chose, the timing of the adverse consequences to Mr. Ford in this case could be seen as especially telling of truth and of the actual motives for animus toward him, both in connection to the EEOC investigation and the EEOC charge, as well as to the amended charge.

Now, the defendant argued to the jury and to us that the motive for denial of bonuses, the hostile attitude and the ultimate discharge was only personal — not illegal — because the new boss (who had been around a long time) had always been possessed of a low opinion of Mr. Ford and was out to get him for non-illegal reasons.  That argument indeed is supported by some evidence and even by admissions of Mr. Ford.  But in the final call — because of substantial evidence on both sides — it was up to the jury, and to the jury alone, to decide what factor or factors motivated the discrimination against Mr. Ford.  And in

---

[1] The defendant argues for the first time on appeal that this was not protected activity, but insofar as the district court may have erred, the error was plainly not plain.

No. 09-60075

making the call, the jury rejected the defendant's account of the reasons for what happened.

The same is true for punitive damages — the disputed evidence, its nature and characteristics, was for the jury to sort out. One supportable view of that evidence is that defendant's conduct, especially when timed with the EEOC investigation and his EEOC charge, was knowing, willful, and even evincing of malice, when weighed against the long, loyal and unblemished service that Mr. Ford claimed, notwithstanding that there was also some evidence of charitable attitudes, expressed apologies and generous severance pay. The defendant's evidence could have persuaded the jury to accept the defendant's side, but it did not; the jury sided with Mr. Ford.

The final word is that this appeal was purely, totally and always a jury case. The jury decided and we AFFIRM.[2] The mandate shall issue forthwith.

AFFIRMED; MANDATE ISSUED FORTHWITH.

---

[2] We feel compelled to observe that, for no reason that is in the record, nor for any reason offered by the district court in response to the mandamus finally filed by Mr. Ford, the district court sat on the verdict for six and one half years before it entered judgment. It is truly regrettable that the plaintiff has been denied his just recovery for these several years by the lack of judicial diligence. Indeed, it was only after a mandamus petition had been filed that the district court took any action. This is not the first time such inexcusable delays have occurred in that court. We urge the court to be more responsive and responsible to its duties and to the litigants. We once again encourage the district court to ask for assistance when it is unable to timely fulfill its judicial obligations.